

CONFIDENTIAL SERVICES, INC.
Recovery Services & Investigations

# CASE SUMMARY OF VON MASON WALKER

## HOMICIDE

### CASE # 16-42560

Chief Investigator Garry Proper (with Confidential Services) received a call from Mr. Willie Walker several weeks after his son Von Mason Walker, had been shot in the head and died from his wound. He was at a party on 10-16-2015 and was shot at the party and died in the kitchen of the house where the party was. Mr. Walker said that the police were not investigating his son's murder and Mr. Walker wanted to make an appointment to come into our office to meet with me and hire Confidential Services to conduct an investigation into his son's murder. I told Mr. Walker that the police were probably working on the case but could not tell him if they had any evidence, because if they gave him that information that it could compromise the case. I told Mr. Walker to give the police more time to work the case before hiring a private investigation agency. I told him if nothing had happened on the case in 2 or 3 months for him to call me and I would have him come into my office to go over the case.

A few months later Mr. Walker did contact Chief Investigator Proper at Confidential Services to request an appointment to come into the office to discuss his son's case. At that appointment Mr. Walker informed me that the Columbus Police Department had ruled his sons' case as a "suicide" and later ruled by the Franklin County Coroner's office as "accidental". I advised Mr. Walker that it is the Franklin County Coroner's office that has the authority to make the final decision not the Police Department.

P.O. Box 091034    Columbus, Ohio 43209    614-252-4646    1-800-752-4581    Fax 614-252-4669

## Interview of Nekeshia Woodfork AKA Kisha Woodfork
## 7/13/2016

Time; 2:25PM

In Attendance: Chief Garry Proper and Investigator John Amburgey. Here to talk on the death of Von Mason Walker with Nikisha Woodfork, who indirectly has information on what happened to Mr. Walker the night of his death.

| | |
|---|---|
| Inv.Amburgey: | Nekeshia, start with what you remember about what happened that night. |
| Nekeshia: | Demetrius (AKA Baby) |
| Inv.Amburgey: | Is that Lamont Galloway? |
| Nekeshia: | Yes, he is short 5'5" light skin and he came over to my house at 1942 Maryland Ave. Apt A, Columbus, Ohio 43209. He and another guy named Demetrius came over to my house and the were high on drugs and they told me about a crime that they had committed four nights before and he explained it was supposed to be a suicide, an attempted suicide they were going to make it look like a suicide. Baby had notified me it was all about the money and that Demetrius had some money that belonged to him and apparently Von Mason had taken it from him, and he had plans on getting it back. He said they had got into an argument in the kitchen of the house and they were going to rob him to get the money back. Baby, known as Lamont, had said that Demetrius who was another guy that was there had walked up to him and made it seem like he was going |

4

to rob him and put a gun to his face and told him to give him everything. Von Mason Walker had refused to give it to him, and they started tussling over the gun and it went off. After the gun went off and they had shot him they left him there to die. After that they said that they made it look like it was a suicide. Because Von Mason had reached for the gun to remove it from his face. There were also two other people there, one by the name of Shane (who had notified me months before that they had taken a lie detector test and that they had failed and that they were trying to set the case because they didn't think that they were going to get charged. They seemed to be very excited but at the same time sad about it, that they didn't intend for it to go like that, but they just thought that he was just going to give them the money that he had taken from them. They just thought it would be ruled a suicide and that no one would be charged for it.

**Inv.Amburgey:** Do you know Shanes' last name?

**Nekeshia:** I think his last name is Briggs, he was another person that had taken a lie detector test and he had failed.

**Inv.Amburgey:** Who did he take the test for?

**Nekeshia:** A private Investigator that the family had hired to investigate the case and when the results came back that they had failed that Shane and Lamont were going on the run and there was a third guy by the name of Demetrius.

**Inv.Amburgey:** How do you know Shane?

**Nekeshia:** Shane is related to one of my cousins, he is like a third cousin on my mom's side of the family.

5

| | |
|---|---|
| **John:** | Now we heard that he may have been living with you at the time? |
| **Nekeshia:** | Shane had never lived with me. It was just me and my two kids. |
| **Inv.Amburgey:** | Is that when you lived on Maryland Ave.? |
| **Nekeshia:** | Yes, he would come over quite often. He would go to nelson Park to buy drugs, him and Baby would get high together and they would come over and just stay and talk but Shane never lived with me. |
| **Inv. Proper:** | Now you had mentioned a third guy, do you know his last name? |
| **Nekeshia:** | No, I never seen him, I had just heard about him though them. |
| **Inv.Amburgey:** | Do you know his nickname? |
| **Nekeshia:** | No, I don't know his nickname, he was just another guy they called Demetrius. |
| **Inv.Amburgey:** | Does the name Demetrius Evans or Mechi mean anything to you? |
| **Nekeshia:** | Yeah, Mechi, that's what they called him Mechi. I have never seen him though. |
| **Inv.Amburgey:** | We also received some information that Shane had told you that he had helped. |
| **Nekeshia:** | Yeah, he told me that he had helped them try and set Mr. Von Mason up and that they were all in the house the night he died and they (the three of them) left together. |
| **Inv. Proper:** | When you say, "set up" what do you mean by "set up"? |
| **Nekeshia:** | They had intentions of taking back the money that Von Mason had taken from them or that he owed them. |

**Inv. Proper:**      Anything else to add?

**Nekeshia:**      No, other than they came to me about, possibly, a week no longer than a week after this had happened. They were all at my house and they were all high and talking among themselves and I just happened to come into the room, and they started explaining to me about what had happened. I asked does anyone else know about this and they said "no." I moved away from my address because they told me that some other people were going to testify against them and if they did make it to the court date that would be the end for them, and they had intentions of the other people who were going to tell on them that they were going to make sure they would not make it to court.

**Inv. Proper:**      You mentioned when we first met you at your door, you mentioned that you were in fear for your life, can you explain why?

**Nekeshia:**      Yes, because after they had said that they had committed the crime, they had said that anybody that was going to testify against them that they would probably come up missing. I have 2 kids and pregnant with two more kids and I am afraid I might not make it to a court date.

**Inv.Amburgey:**      Did they threaten you in anyway?

**Nekeshia:**      Yes, they threatened me, they showed me guns. I have known for Lamont to carry a gun and that Mr. Demetrius Evans is known for killing people and that he has been in plenty of robberies and shoot outs with people over people talking about this court case.

7

| | |
|---|---|
| Inv.Amburgey: | Who were you talking to, these individuals regarding what happened that evening? |
| Nekeshia | It was Lamont and Shane. |
| Inv.Amburgey: | Lamont and Shane that were speaking with you. |
| Nekeshia: | Yes. |
| Inv.Amburgey: | Did either one of them say who shot Von Mason? |
| Nekeshia: | Lamont said that Demetrius (AKA Mechi) Evans had shot him. *Demetrius is Vonmason- Cousin. Dmetri Evans is my eldest Son.* |
| Inv.Amburgey: | Is that the one that had the gun to his head? |
| Nekeshia: | Yes, Lamont was just the one that was going to strong arm him and go through his pockets and when they went through his pockets, he didn't have anything in |
| Inv.Amburgey: | Did anyone say anything to you about doing anything to make it look like it was a suicide? |
| Nekeshia: | Yes, they said that they were going to make it look like an attempted suicide because he had gunshot residue on his hand. They said that when Demetrius ran up onto him while he was standing by the refrigerator that Von Mason had reached for the gun and somehow, someway his hand had got put on the trigger and they shoved it up to his face and shot him and when he shot him, they let go of the gun and he still had the gun in his hand. They said that when the shooting was done, they removed the gun from his hand and left it there. They put it by his body, but they didn't keep it in his hand. |
| Inv. Proper: | Did they say that they moved the body at all? |

8

| | |
|---|---|
| Nekeshia: | Yes, they said that they repositioned the body. They didn't say exactly how, just that they moved him into another part, like they slid him from where he was to somewhere else in the house. Which they didn't give me the location just that they had moved him, and they left shortly after. |
| Inv. Proper: | Ok, you had mentioned that they had made the statement to you that they thought other people were going to testify against them? |
| Nekeshia: | Yes. |
| Inv. Proper: | If it went to court, did they mention names as fa as... |
| Nekeshia: | No, they never mentioned names, they had a potential informant that knew about what was going on and that they had plans on making them not show up to court. |
| Inv. Proper: | When was that last time that you have seen these guys, or have you talked to them? |
| Nekeshia: | I have not seen them since April 14th, that was the last time I was at that address. The last time I seen them on the streets, it's been a couple of months. I've known for Shane to be in the Brentnell area. I've known for "Baby" (AKA Lamont) near Elaine Rd. |
| Inv. Amburgey: | So, after the night that Mr. Walker was shot, how soon after did they show up at your address on Maryland Ave/ and inform you that they were involved in his death and involved in shooting him and then they threatened you? |

Garry Proper and Investigator John Ambugey picked up the witness from Cincinnati on July 20, 2016 and brought her back to Columbus.

**Chief Investigator Garry Proper put Nekeshia up for 1 night at
Holmes Suite Hotel
6335 E. Broad St.
Reynoldsburg, Ohio
Date In: 7/20/2016 at 2:45PM
Date Out: 7/21/2016 11:00 AM

**This bill was paid by Chief Investigator Garry Proper

On the night of July 20,2016 Investigator Amburgey picked the witness, Nekeshia Woodfork, up at the hotel and took her downtown to Police Headquarters to talk to Detective Wachalec and Detective Titus.  Upon arrival Det. Wachalec met them in the lobby and escorted Nekeshia and Inv. Amburgey upstairs to his office.  Detective Wachalec was cordial on the way up the stairs but changed when he entered the interview area. Detective Wachalec instructed Inv. Amburgey to remain in the lobby while they interviewed Nekeshia. Inv. Amburgey advised that he wound like to be present during the interview.  Detective Wachalec refused to allow Inv. Amburgey in the interview room and said if he didn't like that then the meeting was over.  Inv. Amburgey complied with the request.

Inv. Amburgey could hear through the walls when the interview began and that detective Wachalec was interviewing in a tone, treating Nekeshia as a suspect not a friendly witness. Inv. Amburgey could hear Detective Wachalec's partner, Lowell Titus, say "she is a witness, and she came here voluntarily" to help us.  Investigator Amburgey could also hear Nekeshia say that she did not like to be yelled at. Shortly after Detective Titus came to the waiting area and Inv. Amburgey made it known to Detective Titus that he was not happy with the way Det. Wachalec was handling the situation on the Willie Walker case.  Det. Titus stated to Inv. Amburgey that the case was screwed up by the original primary detective and that Det. Wachalec wasn't really looking at this case.  Detective Wachalea asked

13

Nekeshia to take a polygraph, which she agreed to take one. When Det. Wachalea and Nekeshia came out of the interview room and Det. Wachalea said that he wanted Nekeshia to take a polygraph to see if she was telling the truth. Investigator Amburgey told Det. Wachalea that he was also a polygraph examiner and that Nekeshia was pregnant and she could not take a polygraph, it would not be accurate because there would be 3 heart beats (Nekeshia was pregnant with twins). Det. Wachalea said he still wanted her to take the polygraph and that he would schedule it and let them know when that would be. Weeks later Det. Wachalea called Inv. Amburgey to get the information on when the polygraph would be. Inv. Amburgey took Nekeshia in for the polygraph. The polygraph examiner talked to Nekeshia and when the examiner found out that she was pregnant the examiner said he could not test her because the test would have to be done after she had given birth. She never took the test.

Investigator Amburgey returned Nekeshia to the Holmes Suite Hotel at 6335 E. Broad St, Reynoldsburg, Ohio

Chief Investigator Garry Proper picked the witness up from Holmes Suite on July 21, 2016 at 11:00AM and went to the Shelter in downtown Columbus, at this location Inv. Proper talked to a manager there and was referred to the location at 595 Van Buren Dr. Columbus, Ohio. They said they would call and let them know that he would be coming. At this location Inv. Proper talked Director Julie Wagar and he explained the situation, that she had 2 children and that she was a witness in a possible homicide case and needed to be in a secure location. Julie Wagar advise Inv. Proper that they did have security at this location. Nekeshia was accepted at the shelter on 7/21/2016. Nekeshia stayed there for approximately four weeks. At this point there was a meeting set up with the Clinical Director, Julie Wagar and Service Coordinator, Brandon Dupuis. In this meeting a home was found in the Grove City area, that was owned by a woman who rents her home to people like Nekeshia and the cost would be $1200. We agreed to this arrangement. Nekeshia was able to stay at the shelter until the arrangements could be finalize. Inv. Amburgey

14

called the woman who owned the home and made the arrangement to take Nekeshia. This home was in the Westgrove Subdivision. The woman advised Inv. Amburgey that the cost was $1200, and it had to be paid before accepting Nekeshia.  <u>Willie Walker was called and notified that a home was found, by the shelter Director and Service Coordinator. A payment of $1200 had to be made before she could stay.  Willie Walker had his niece take the payment to the woman who owned the home.  Inv. Amburgey took Nekeshia to this home in Grove City.</u>

## DECSION TO MEET WITH THE CORONER AND THE PATHOLOGIST

After not getting any cooperation from Det. Wachalea and his Sargent and Lieutenant, Chief Inv. Proper called Det. Titus and told him it was obvious to me that we were not getting any cooperation from Det. Wachalea and that I have decided to take the next step to get the Von Mason Walker case ruled a homicide. I asked Det. Titus if he thought we had a good case and he said yes, but it was his partner's, Det. Wachalea, case, therefore he couldn't do anything. I talked to Inv. Amburgey and gave him instruction to call the Coroners office and set up an appointment to meet with the Pathologist who had preformed the autopsy on the Von Mason Walker case. The meeting was scheduled. We met with the Pathologist, Doctor Kent Harshbarger. We presented our case showing Dr. Harshbarger our witness statements, our ballistic evidence, and the physical evidence. I also advised him of our dealings with the primary detective, Det. Wachalea, his Sargent and Lieutenant, that they were not doing anything with our evidence. We told Dr. Harshbarger that is why we had come to the Coroners office to present our case to get the case ruled as a Homicide. After looking at all our evidence, Dr. Harshbarger decided to rule the Von Mason Walker case a homicide. Dr. Harshbarger called Det. Wachalea and left messages for him so that he could let him know about the new ruling and asked him to call.

Det. Wachalec:     The thing with that is how can they and I realize that
                   something the Pathologist at the time they did the
                   autopsy if they had known he would have looked at
                   this a little closer.

Inv. Proper:       He didn't review the body again after it had been
                   washed off. He reviewed it when the body was first
                   brought in and he admitted that he had missed
                   that.

Inv. Amburgey:     He was given certain statements and facts and
                   details from the original Detective Warner.

Det. Wachalec:     I guess my question is at the time of the autopsy
                   they probably would have been able to tell if it was
                   a fresh or an older wound, maybe a day or two
                   older, you know what I am saying.

Inv. Proper:       Like I said, when he saw it, he admitted that he had
                   missed that.

Det. Wachalec:     So, what this is all boils down to we got to track
                   down.

Inv. Amburgey:     You have to find three people.

Det. Wachalec:     Right.

Inv. Amburgey:     And get them off the street. In my belief I think the
                   easiest person to pull their chain or maybe get
                   them talking is Shane.

Det. Wachalec:     Yes, I have a question about that. When you gave
                   Baby and Shane their Polygraph.

VERIFY PRESENCE OF ODH WATERMARK     HOLD TO LIGHT TO VIEW

Reg. Dist. No. 2501

Registrar's No. 2500-2015010197

1010971

**Ohio Department of Health**
**VITAL STATISTICS**
**Supplementary Medical Certification**

State File No. 2015097433

| Name of Deceased | | |
|---|---|---|
| **VONMASON S WALKER** | | |

| Place of Death | Date of Death |
|---|---|
| **Other** | October 16, 2015 |

| 23. Registrar's Signature | 24. Date Filed |
|---|---|
|  | NOV 28 2016 |

| 25a. Certifier (Check only one) | ☐ Certifying Physician<br>To the best of my knowledge, death occurred at the time, date, and place; and due to the cause(s) and manner stated.<br>☒ Coroner<br>On the basis of examination and/or investigation, in my opinion, death occurred at the time, date, and place; and due to the cause(s) and manner stated. |
|---|---|

| 25b. Time of Death | 25c. Date Pronounced Dead (Mo/Day/Year) | 25d. Was Case referred to Coroner? |
|---|---|---|
| 2321 | October 16, 2015 | Yes |

| 25e. Signature and Title of Certifier | 25f. License number | 25g. Date Signed |
|---|---|---|
|  | 35.063104 | 11-15-2016 |

27. Name (Last, First, Middle) and Address of Person who Completed Cause of Death
ORTIZ, ANAHI M, MD, CORONER, 520 KING AVENUE, COLUMBUS, OH, 43201

| 28. Part I. Enter the disease, injuries, or complications that caused the death. Do not enter the mode of dying, such as cardiac or respiratory arrest, shock, or heart failure. List only one cause on each line. Type or print in permanent black ink. | | Approximate Interval Between Onset and Death |
|---|---|---|
| Immediate Cause (Final disease or condition resulting in death) | a. **GUNSHOT WOUND OF THE HEAD** | **INSTANTANEOUS** |
| Sequentially list conditions, if any, leading to the immediate cause. | b. Due to (or as Consequence of) | |
| Enter Underlying Cause Last (Disease or Injury that initiated events resulting in a death) | c. Due to (or as Consequence of) | |
| | d. Due to (or as Consequence of) | |

| Part II. Other Significant Conditions contributing to death but not resulting in the underlying cause given in Part I. | 29a. Was an Autopsy Performed?<br>Yes | 29b. Were Autopsy Findings Available Prior to completion of Cause of Death?<br>Yes |
|---|---|---|

| 30. Did Tobacco Use Contribute to Death?<br>No | 31. If Female, Pregnancy Status<br>NOT APPLICABLE. | 32. Manner of Death<br>Homicide |
|---|---|---|

| 33a. Date of Injury (Mo/Day/Year)<br>October 16, 2015 | 33b. Time of Injury<br>99:99 | 33c. Place of Injury (e.g., Decedent's home, construction site, restaurant, wooded area)<br>HOUSE | 33d. Injury at Work?<br>No |
|---|---|---|---|

| 33e. Location of Injury (Street and Number or Rural Route Number, City or Town, State)<br>321 Johnson Street , COLUMBUS, OHIO | | | |
|---|---|---|---|

| 33f. Describe How Injury Occurred:<br>Shot By Other(s) | 33g. If Transportation Injury, Specify: |
|---|---|

HEA 2762
Rev. 01/07

THIS SUPPLEMENTARY CERTIFICATE IS TO BE COMPLETED BY THE ATTENDING PHYSICIAN
OR CORONER AND FILED WITH LOCAL REGISTRAR OF VITAL STATISTICS
Required by section 3705.27 of the Ohio Revised Code

Tom Bevel, President
Ross M. Gardner, Vice President

Partners:
Tom "Grif" Griffin
Craig Gravel
Jonathyn Priest

*Bevel,*
*Gardner*
*&*
*Associates* Inc.
*A forensic education and consulting group.*
www.bevelgardner.com

Associates:
Kim Duddy
Ken Martin
Lesley Hammer
David Dustin

**RE:**     Crime Scene Analysis – Vonmason Walker Death Scene

**For:**     Willie Walker
1249 Gertrude Drive
Columbus, OH  43227

**Purpose:** An in-depth crime scene reconstruction employs scientific method to evaluate the physical evidence known to the analyst. Its function is to gain explicit knowledge of the series of events that comprise a given incident and when possible to identify the sequence of those events. The analyst's opinion is based upon all available evidence and relies upon his education, experience and training.

It is important to recognize that few reconstructions can answer all questions or identify all events and events segments related to a given incident. Should additional information become available in the future, the analyst will consider such information's significance and may choose to revise the final analysis.

**Submitted:** 19 Sept 2017

Ross M. Gardner

Direct Mailing Address: 913 Villas Creek Drive, Edmond, OK 73003
Voice: 404-285-0217 or 405-447-4469 • Fax: 405-447-4481 • Email: bevelgardner@cox.net

Per our conversation I am writing a synopsis of my evaluation of your sons death scene analysis. As discussed the general scene is consistent with self-inflicted injury, but certain aspects of the scene raise some issue. The data present in the scene is limited and the crime scene analysis cannot resolve the final issue of whether this is in fact self-inflicted.

Based on the apparent impact spatter on the front of the refrigerator (DSC 0010) and given the position of the bullet defect high on the wall behind it, demands that at the moment of wounding Vonmason was in a standing position forward of the refrigerator door, left side oriented somewhat toward the wall.

If the oil container on top of the refrigerator had a bullet defect in it (no photograph was provided that would support that belief) it is not inline with the obvious position demanded by the spatter and the defect in the wall. Thus if that were true, it would suggest this item was reoriented. I think however this was a misinterpretation by the crime scene investigator. There are no obvious defects in the container that one would associate with typical bullet defect morphology.

After injury, Vonmason collapsed to an interim position likely seated in some fashion. This collapse was quick, as drip stains that were deposited on his left knee from above subsequently flowed to the left. (ME 0013) The staining observed on the left front aspect of his pants (ME 0011) indicates he was in this seated position for at least a moment, allowing drips from his head to fall to this area.

This assumed interim collapse position is consistent with his final position (simply raise his torso up from his final position). This positioning is also supported by a series of drip and flow stains that are present on both the side of the refrigerator and the crib. (DSC 0016, 0029)

Of some interest is the position of the weapon, as found by crime scene investigators. The weapon has been moved. It overlies drip stains on the tile floor (DSC 0019). Had the weapon been dropped to this position, the drips should overly the weapon. Additionally, if dropped to this position from Vonmason's right side, one would expect that his legs and body in the process of collapsing to his final position would have displaced the weapon from where it lies.

After achieving the interim seated position, Vonmason collapsed left to his final position. I have some issue with the extension of his legs. They seem extended, which is not consistent with a simple collapse. This may however be explained by movement by Vonmason after collapse. The autopsy does not indicate specific injury that would demand immediate immobilization (e.g., brain stem injury), so subsequent motion (conscious or otherwise) after injury is always possible. Nevertheless as he lies in final position they do appear fully extended, and given the nature of the shoe soles and the tile, simple sliding across the floor seems unlikely.

Beyond these three orientations he was not in any other positions in the scene. All flows present on his body are consistent with the natural movements required during transition from the standing, to sitting to laying positions as indicated.

2

Contrasting the conditions of the weapon and Vonmason's hand does raise some issue. The weapon as photographed on scene has obvious back spatter (small stains coming from the wound back toward the weapon, see DSC 0034). These stains are present in number and extend across the right side to the back aspects of the upper receiver and include the trigger guard of the weapon. Vonmason has spatter on the back aspect of his right hand. There are at least 5 stains present including an obvious elliptical stain directly behind the knuckle of the middle finger. (ME 0008) The orientation and directional aspects of the stains demand the hand was in proximity to the gunshot event and is consistent with Vonmason holding the weapon. The contradictory issue involves the lack of stains on the fingers of the same hand. Wrapped around the grip of the weapon, these fingers would have been exposed to the same level of staining as observed on the right side of the weapon. Yet there are no stains evident in the area that was actually photographed. As the entire back of the fingers was not photographed, this contradiction cannot be resolved. The lack of staining on the palm indicates this area was not exposed to the event, which may be a function of holding the weapon, but could also be explained by position alone.

The last issue I observed is the position of the red hat. This item has, what appear to be, defects consistent with it being worn at the moment of gunshot. Its position is however displaced to the right in the scene. Having displaced as a function of collapse, one would expect it closer to his standing position (oriented more to the right of the scene).

Ultimately I find no evidence that demands the wounding was not self-inflicted, the scene in general is consistent with such a scenario. The scene does present certain discrepancies as described. The alterations described need not be nefarious, as this commonly occurs in the immediate actions of those discovering the body or first responders. Generally, this activity of alteration is self-described by witnesses. I understand that such claims were not forth coming in this situation.

Your honor, the CPD Cold case division only singled out just 1 out of the 5 investigations for the BCI review report. The reason the

Bevel Gardner report was only selected because of the analysis of the crime scene photo 34, was analyze that Mr. VonMason was

holding the gun because of the illegal blood spatter on the back end of the handgun was there! Not realizing that crime scene photo

19 doesn't show blood back spatter on the back end of the handgun! CPD exploited this Info to BCI, (misled!)

Thank you, Mr. Willie Walker.

3

The BCI conclusion report, response by willie walker.

From: walk (walker22w@aol.com)

To: gbodker@columbuspolice.org

Date: Sunday, December 17, 2023 at 03:30 PM EST


Hello Chief Bodker, I had completed the review of the VonMason Walker murder case as you suggested me to do.

CPD did not represent me or are family and friends and didn't let us dispute or contest any false misleading Info or

lies that were told . The report shine the light on some of the disputes we tried to explain to CPD but refuses to work

the murder case correctly. One of are complaints was VonMason body position as Mr. Wilgus evaluate and paired up

matching the blood evidence on VonMason shirt and the blood droppings on the kitchen floor in front of the fridge

onto the gun ! VonMason was in that vicinity first when he was shot! The perpetrators reposition Mason body like the

witness said they did ! I'm going to make this short and give one more complaint which is the blood on VonMason

right hand. Mr. Wilgus describe the blood evidence as transfer stains and a larger bloodstains on the right hand.

Chief Bodker this blood on VonMason hand isn't high velocity blow-back,the analogy by CPD was wrong! Chief

Bodker we want these people held accountable for my son's murder !    Thank you, Willie Walker.



----- Forwarded Message -----
**From:** Office Depot <noreply1@officedepot.com>
**To:** walker22w@aol.com <walker22w@aol.com>
**Sent:** Sunday, December 17, 2023, 01:25:49 PM EST
**Subject:** Your Self Service Scan from Office Depot

From: <noreply1@officedepot.com>

Here is your scanned attachment.

CONFIDENTIALITY NOTICE: The information contained in this email and attached document(s) may contain confidential information that is intended only for the addressee(s). If you are not the intended recipient, you are hereby advised that any disclosure, copying, distribution or the taking of any action in reliance upon the information is

The VonMason Walker murder case.

From: walk (walker22w@aol.com)

To: gbodker@columbuspolice.org

Date: Saturday, December 23, 2023 at 09:35 AM EST


Hello Chief Bodker. I'm sending you this picture from the Mr. Wilgus Forensics response I sent you. On page 5 the pack N play paragraph, the explanation description about the netting is, there's a blood cast off pattern on side of the netting,

and that's it! As you examine the photo you can see that the blood transfer stains have a directional downward pattern that show falling straight back is incorrect. Aso
On page 3 there's some misconception going on because there was no report added of the documented homicide status! Aso on page 8 the report identifies the manipulation of the gun in crime scene 34 and not the true Unmanipulated gun in
crime scene photo 19 that show the difference between the two photographs.

Also, on page 7 Mr. Wilgus identifies and connected the dots by the blood stains patterns on VonMason shirt at his final rest area to the Undocumented blood dropping stains that's on the kitchen floor in front of the refrigerator and on top of the gun. VonMason Walker body was reposition by the perpetrators! CPD. Det. Warnick
had concerns about VonMason body position. Now we have the, (Proof!)

Alos, on page 7 Mr. Wilgus describes the blood on VonMason Walker right hand as transfer stains and as a larger bloodstain! The blood on VonMason right hand isn't, high velocity blow-back! This whole crime was based on this evidence alone!

The VonMason Walker case status needs to return back to a, (Homicide!) and have, these, (Perpetrators) charged and arrested!

Thank you, Willie Walker.


----- Forwarded Message -----
**From:** "6144416911@mms.att.net" <6144416911@mms.att.net>
**To:** "walker22w@aol.com" <walker22w@aol.com>
**Sent:** Saturday, December 23, 2023 at 07:31:46 AM EST
**Subject:**


image000000.jpg
889.1kB

*Find attached*
*Willie Walker*
*3.14.24*

VonMason Walker.The last added response from the BCI Forensic report..

From: walk (walker22w@aol.com)

To: gbodker@columbuspolice.org

Date: Sunday, December 24, 2023 at 02:27 PM EST


Page 1. History: VonMason mother Jennifer Gillman got the call that VonMason was shot and dead at 10:49 pm. The first 911 call from the scene came in at 11:13pm. A 24-minute delay before calling 911 for help!

Page 5- Bloodstain Analysis: The 2nd & 3rd paragraph help confirm the 24 mins delay by connecting the dots. The blood patterns stains on the side of the fridge show different, (Action) pattern movements, instead of a single falling backwards, stain one time. The other example of a pattern delay is the multiple blood dropping, stains inside of the playpen mattress padding, shows minutes leaning over in that area dripping blood. Shane Brown said from his polygraph questions, that he arrived at 10:00 pm.on 10-16-2015. Shane also mentions that VonMason and them arrived at10:15pm. Lauren Simpkins mention on CPD documentation that they arrived at 10:15pm. She stated VonMason and Demetrius went inside the house. Lauren said mins later Brianna Dotson (Bri) came out and wanted to go to the store,10:20pm they get to the store,VonMason called her, asking how long, Lauren said they are cashing out now, she said Mason tell her to be careful, hurry-up.10:30pm. They arrive back and everything was, (chaotic!) 10: 34pm.The store is around the corner a minute or 2 minutes away from the house. The time now fall back to Jennifer Gillman getting that dreadful phone call that her son was shot and dead!

Page 11- 3rd paragraph. The analogy statement by Mr.Wilgus just simply identify the location of the gun shot wound and the deep tissue soot. there are no forensic match making comparisons from the gun- muzzle stamp that's embedded in VonMason Walker head wound and no compared forensic of the face design of the collected 9 mm high point gun that doesn't match the gun embedded imprint in VonMason Walker's head wound. Mr. Wilgus lacked significant knowledge issues we have with the gun and the head wound .

That gun walked away from the crime scene! By Lamont Galloway, (babie.) The evidence points to him!

                                        Willie Walker.


----- Forwarded Message -----
**From:** 6144416911@mms.att.net <6144416911@mms.att.net>
**To:** "walker22w@aol.com" <walker22w@aol.com>
**Sent:** Sunday, December 24, 2023 at 12:16:15 PM EST
**Subject:**

Find attached.

Willi Walker
3·14·24

image000000.jpg
562.1kB

## Fw: Columbus Police.

From: walk (walker22w@aol.com)

To: walker22w@aol.com

Date: Thursday, September 12, 2024 at 06:12 PM EDT

----- Forwarded Message -----
**From:** Bodker, Gregory <gbodker@columbuspolice.org>
**To:** walker22w@aol.com <walker22w@aol.com>; Weir, Smith <sweir@columbuspolice.org>
**Sent:** Wednesday, January 24, 2024 at 06:35:36 PM EST
**Subject:** Columbus Police.

I'll try this again, as Mr. Walker did not receive the earlier email.

Sent from my iPhone

Begin forwarded message:

> **From:** "Bodker, Gregory" <GBodker@columbuspolice.org>
> **Date:** January 24, 2024 at 11:57:00 AM EST
> **To:** walk <walker22w@aol.com>
> **Cc:** "Weir, Smith" <SWeir@columbuspolice.org>
> **Subject: Information**

Mr. Walker,

I have copied Deputy Chief Smith Weir on this email, as he is the Deputy Chief over the Criminal Investigations Subdivision, which includes Homicide. He and I briefly discussed Von Mason's case today and he is open to discussing with you further.  Mr. Walker, I have shared with you that while I appreciate your passion, the following are important facts in this case:

• The Franklin County Prosecutor has formally shared with CPD, after a review, that this is not a prosecutable case.

• In 2018, you filed a complaint with the Internal Affairs Bureau (IAB Case #201804-1025) regarding this investigation

• You have been a party to several formal meetings, that I am aware of, with the Mayor, at least the last 3 Public Safety Directors, at least the last 3 Chiefs of Police, myself, several members from investigators to deputy chiefs.

• The crime scene was reviewed by BCI Crime Scene Supervisor Gary Wilgus

• Those present at the scene in 2015, have shared several accounts with officers, private investigators and you. Those accounts are inconsistent.

*This is chief Bodker report to me from the BCI response, which is - nothing. (w.w)*

The goal of <u>all</u> of our Homicide Detectives is to provide answers to the families of victims; we understand that is our mission. Although none of us were originally involved in this case in 2015, we are all willing to meet with you, talk with you and exchange information. Since I try to set aside at least an hour when I call you, I will try to give you a call later this week. I hope you're feeling better.

-Greg

**Assistant Chief Gregory J. Bodker #5002**

**Columbus, Ohio Division of Police**

Operations Branch

120 Marconi Blvd.

Columbus, Ohio 43215

Cell: (614)774-7826

Email: GBodker@columbuspolice.org

Maintins blood spatter

Photograph 34.



Photograph 19.



Response from page 5. (Pack N Play.) The blood splatter stains wasn't analyzed correctly. (You just can't say it's there.) The blood splatter stains has a downward directional pattern. A crime was committed against Vanwason Walker.













This is the gun imprint stamp mark that doesn't match the face design of the CPD collected hand- gun from the crime scene. scene!

(w y.)

Also the gun imprint stamp mark is at an clockwise angle mark position. Von mason is right-handed.

wrong angle mark!



The pathologist examine the body after the body washed cleaning.

That's why there's no face design comparison to he head wound imprint to the face design to the handgun. (no documentation)

COPY

## ADDITIONAL NOTES

On October 17, 2015 at approximately 12:02 a.m., Detective Robby Warnick #1797 interviewed the following person:

TIANNA DARBY
Female Black 27
DOB:        9/8/88
Address:  402 ST. CLAIR AVENUE
               COLUMBUS OHIO 43203
Phone:    614-966-2557
CPD ID# 94074B

*This story is false, fabricated by Det. Warnick. Listen to Tianna Darby C.P.D. Interview she gives a totally different statement at the Crime Scene*

Ms. Darby said that she was sitting in the living room and heard a bang. Ms. Darby said she ran out of the house. Ms. Darby said that she was uncertain what happened to Mr. Walker. She explained that she was there most of the day and there was no arguing and everyone was in good spirits. She further explained there were several guys in the kitchen at the time but none of them stayed around.

*Tianna pointed me that she tried to contact Det. Warnick several times*

Ms. Darby had nothing more to add to the interview. *Tianna said Det. Warnick lying + deceitful. Tianna Darby had plenty to say.*

On October 16, 2015 at approximately 11:40 p.m., CSSU Detective Gary Cooper #1766 and Ray Guman #1856 arrived at the scene and was instructed to photograph the scene, take measurements and collect evidence.

Detective Guman took a series of (42) forty two standard digital photographs of the scene and submitted them for development. The evidence was collected and submitted to the Columbus Police Property room under property #15022016

On October 17, 2015 at approximately 12:52 a.m., Renata Penafiel from the Franklin County Coroner's Office arrived and processed the scene.

On October 17, 2015 at approximately 2:01 a.m., Columbus Police Wagon 78 transported the deceased to the Franklin County Coroner's Office.

On October 17, 2015 at approximately 2:30 a.m., C.S.S.U., The Coroner's Investigator and The Homicide Detectives cleared the scene.

THE SCENE:

The house is a 2 story home that is situated on the west side of Johnson Street and the alley just south of Mt. Vernon Avenue. The area of interest is the kitchen. I am going to describe the area where the victim accidentally shot himself.

In the southeast corner of the kitchen is a baby play pen with what appears to be blood cast off on the netting. Between the play pen and the refrigerator is where the body of VonMason Walker came to rest after he accidentally shot himself. Mr. Walker is on the floor flat on his back. Blood is surrounding

*# Willie Walker OSK for 6 min th. apart - what 7 am & Teen. Her - had me there are blood from a lot of object at a dynamic crime scene. Tianna Sic could have been delusional what she saw that night.*



COPY

## ADDITIONAL NOTES

On October 17, 2015 at approximately 12:02 a.m., Detective Robby Warnick #1797 interviewed the following person:

TIANNA DARBY
Female/Black/27
DOB:      9/8/88
Address:  402 ST. CLAIR AVENUE
          COLUMBUS OHIO 43203
Phone:    614-966-2557
CPD ID#  94074B

Ms. Darby said that she was sitting in the living room and heard a bang. Ms. Darby said she ran out of the house. Ms. Darby said that she was uncertain what happened to Mr. Walker. She explained that she was there most of the day and there was no arguing and everyone was in good spirits. She further explained there were several guys in the kitchen at the time but none of them stayed around.

Ms. Darby had nothing more to add to the interview.

On October 16, 2015, at approximately 11:40 p.m., CSSU Detective Gary Cooper #1758 and Ray Guman #1856 arrived at the scene and was instructed to photograph the scene, take measurements and collect evidence.

Detective Guman took a series of (42) forty two standard digital photographs of the scene and submitted them for development. The evidence was collected and submitted to the Columbus Police Property room under property #15022016

On October 17, 2015, at approximately 12:52 a.m., Renata Penafiel from the Franklin County Coroner's Office arrived and processed the scene.

On October 17, 2015, at approximately 2:01 a.m., Columbus Police Wagon 78 transported the deceased to the Franklin County Coroner's Office.

On October 17, 2015, at approximately 2:30 a.m., C.S.S.U., The Coroner's Investigator and The Homicide Detectives cleared the scene.

THE SCENE:

The house is a 2 story home that is situated on the west side of Johnson Street and the alley just south of Mt. Vernon Avenue. The area of interest is the kitchen. I am going to describe the area where the victim accidentally shot himself.

In the southeast corner of the kitchen is a baby play pen with what appears to be blood cast off on the netting. Between the play pen and the refrigerator is where the body of VonMason Walker came to rest after he accidentally shot himself. Mr. Walker is on the floor flat on his back. Blood is surrounding

These 8 people were In the kitchen or house when Mr.Vonmason Walker was murdered  on October 16th,2015. They should be held accountable  for premeditated  murder and accessory to murder after the fact! (Complicity!)

1 . Lamont M. Galloway(babie) Suspect shooter, armed robber, murder cover-up. liar, Reset the crime scene, and the planner, Sent a threatening text to Vonmason's cell phone. He was saying straight beef on (site) when I, see you,' prepare' yourself ! He also ran from the crime scene to get rid of his gun. Change his shirt. He lied to the 911 operator about his position and Demetrius Billups saw he was leaning over VonMason when the shot was fired! Tammy Darby said she asked Lamont Galloway and Brianna Datson's (Bri) eldest daughter what happened, the little girl said daddy,' Lamont' shot uncle Mason In the head. On Oct 18th,2017 Sam Valentine said on CPD audio recording that he saw Lamont Galloway(babie) he was nervous and shaking and asked Sam what he should do with the gun! Sam told Lamont to get the gun away from the house! And he did! Also in the Confidential Services Investigation report, the witness Nakeshia Woodfork gave a statement saying, Lamont Galloway told her all he was supposed to do is strong arm rob VonMason Walker! That's why CPD was going to pick up Lamont and Shane Brown from  the Confidential Services meeting and they never did ! Both again are,(Untouchable!)

2 . Shane Maurice Brown. The suspect shooter, the Planner, was at arm's length away from Mr. Vonmason Walker when he was murdered! Shane Brown is left handed ! Mr.VonMason Walker head wound gun imprint,(mark) fit  a left handed person holding the gun!  Murdered Cover-up, liar! Ran from the crime scene! Shane Brown said he saw Vonmason Walker shoot himself with a gun, but failed his polygraph test! Shane Brown didn't see Vonmason Walker shoot himself, someone else did! CPD put two ID'S alerts out on Shane Brown!,( Untouchable!)

3. Demetrius Lamar Billups,(Meechie, Meech, Cousin) Suspect,Possible shooter! Abuse of a corpse ravishes through Mr.Vonmason pants pockets, not calling 911 for help, he's a habitual liar !And he failed his polygraph  test! Murder cover-up. Mr.Vonmason Walker missed his money, his two critical Identification cards, his CCW licenses,and his Commercial driver's license. He also failed to mention that he handled  the gun ! Also on Oct 18th,2017 on CPD audio recording the detective asked Sam Valentine who shot VonMason ? Sam replied back saying, (Demetrius!) Two ID'S alerts out on Demetrius Billups! ( Untouchable!)

4. Deon Crockett,witness! Shane Brown's girlfriend ! Ran from the crime scene with Shane! She said," She saw Mr. VonMason  shot himself !" She verbally says he did! But when the CPD  cold case unit asked Deon  if she would take a (Polygraph test) she answered no! Knowing she's part of the conspiracy murder cover-up a (habitual liar) for Shane Brown! she said,she will never forget,"seeing"VonMason Walker shoot himself with a handgun! But will not(consent) to a polygraph  test!

5. Shane  Stovdemire or Stacks, witness!(Damu Denino) saw who murdered Mr.Vonmason Walker! He lived at the residence! Murder cover-up, liar ! He said to me that Demetrius was handling the gun! A habitual liar!

6. Caprice Carter possible witness !Sam Valentine said in his CPD  audio recording Interview with Denise Herring to Det. Wachalec on track 8:38 - 8:42 that Caprice Carter was there, repeated  Caprice's name twice, did you hear me to Det Wachalec? CPD never Interviewed  this guy!

7. Dawnsha  Davison witness, (Binky! ) Conspiracy murder cover up, liar for Sam Valentine! He brought Dawnsha  to me the night of Mr.VonMason  Walker murder, she was in the house when the murder took place! Sam says, tell him,'that's' VonMason "dad"! She said to me that Mason was dancing in the kitchen with a gun in his hand and slipped or tripped over a toy truck shooting himself in the head! I said to her " Bullshit!"get the hell out of here! Sam Valentine told( Binky) to tell me that bald face lies ! Dawnsha Davison (Binky)never mentioned  this in her CPD interview!  She said to CPD, she didn't know what happened !

8. D'metri Melvin Evans, my son Is deceased as of Oct 16th, 2020 (WOW!) The perpetrators say he wasn't there! Mastermind planner ! Murder cover-up (habitual liar!) We believed at first that the shooter was Lamont Galloway (babie) at first!
  When I hired the private Investigator service Confidential services. They said the shooter was D'metri Evans,(Meechie, Meech.) but the perpetrators say he wasn't there! The Confidential Services witness said In the audio recording the shooter went by the name Demetrius,(Meechie, Meech.) Who Is the,(cousin) of VonMason Walker! There was a mix-up with the,(Nicknames) who were In the kitchen that fatal night!     Willie Walker.



12/17/2024

## CPD.Know they murdered Vonmason Walker CD.

01. At the end of the meeting. I said to Det. Wachalec,they killed my son. Det.Wachalec responds back saying,Willie, I know It's a matter of proving it.

02. Lt.Smith said to me Willie Walker, that he talked to the witness Nakiesha Woodfork and she said, babie didn't tell her who pulled the trigger but he said, (babie) it wasn't a suicide that it was a murder.

03. CPD. Det. Warnick saying, If Vonmason was dancing he could have slipped and shot himself in that area.

04.Det. Wachalec knowledge that Vonmason was shot in the middle of the kitchen floor.

05. Demetrius Billups recant his statement to me, Willie Walker, where Vonmason was standing before he went to the bathroom. ( Finally the truth.)

06.Det.Wachalec acknowledges that the blood on Vonmason Walker hand came out of his head.(Not blowback.) That's CPD physical evidence. ( Finally the truth!)

07. Lt.Smith saying to me Willie Walker, that the one thing he agrees with me on, that it's a bunch of lies.

08.CPD.Det. Warnick saying why is everyone lying to him, that's what's so confusing.(It's a murder cover-up.)

09.CPD. detectives said the dad found disturbing text in Vonmason cell phone, that his brothers just shot at him.

10. Tammy Darby said Sam Valentine told her that Meechie ran out the backdoor.

11. Denise Herring said to CPD.Det. Wachalec when she went into the house, she did not see a gun anywhere on the kitchen floor.

12. Det.Wachalec asked Sam Valentine, who shot Vonmason. Sam replied, Demetrius!! ( Demetrius should be a suspect !!)

13. Denice Herring said all of them meet up that night around 4 am to have the same story.

14. Sam Valentine said Vonmason did not pull the trigger!

15. Lt. Smith said to me Willie Walker that Dr. Ortiz don't know much about the Vonmason Walker case. ( abuse of power.)

16. Dr.Kent Harshbarger, the pathologist.